UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR. 03-0095 WBS |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER RE: DEFENDANT'S MOTION FOR DISCOVERY |
| AMR MOHSEN, | |
| Defendant. | |

----oo0oo----

Following his indictment, trial, and conviction for perjury, obstruction of justice, contempt of court, and soliciting witness tampering and arson, petitioner Amr Mohsen filed a motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. (Docket No. 789.) Presently before the court is petitioner's motion requesting discovery that he claims is necessary to prepare a reply brief on his § 2255 petition. (Docket No. 810.)

///

1

I. Procedural and Factual Background

In a two-phase jury trial, petitioner was found guilty of crimes related to alleged perjury and obstruction of justice in a patent infringement case and contempt of court (phase one), and soliciting witness tampering and arson (phase two). During the first phase of the trial, evidence was presented suggesting that petitioner had fabricated an engineering notebook in the underlying patent infringement case, testified falsely about the notebook, and conspired with his brother to fabricate the notebook and provide false testimony about it. The fabricated notebook belonged to petitioner and relates to the underlying civil patent and antitrust litigation between Aptix (of which petitioner was the CEO) and QuickTurn.

Separate from the fabricated notebook, the government also presented notes (the "Lobo notes") that appeared to record what transpired at a meeting that occurred between petitioner and Keith Lobo, QuickTurn's CEO, on August 19, 1996. (Rep.'s Tr. ("RT") 147-49.)[1] According to the Lobo notes, petitioner notified QuickTurn that it was infringing on the '069 patent at that meeting. (RT 147-50.) Petitioner later produced the falsified Lobo notes in the civil patent litigation to support his claim that QuickTurn's violation of the patent was willful and that treble damages should begin to run from the time that petitioner claimed that he provided notice to QuickTurn on August 19, 1996. (RT 148-52.)

---

[1] Citation to the Reporter's Transcript, or RT, is used to reference the trial transcript. All citations to pre- and post-trial transcripts are referenced by date of the proceeding.

2

At trial, the government presented evidence that before turning over the Lobo notes to Quickturn, petitioner sent different versions of the notes to Robert Kuranz in Wisconsin to see if Kuranz could date-test the ink. (RT 281-84.) The government used this evidence to show that the Lobo notes were falsified by petitioner in order to support his claim regarding notice in the civil patent case and that the notes were not actually written concurrently with the meeting in question.

The amended § 2255 petition raises claims of ineffective assistance of counsel and failure of the government to turn over exculpatory evidence. Petitioner claims that his trial counsel failed to conduct discovery that would have shown that the Lobo notes and misrepresentations regarding the notes were not material and therefore did not support his convictions for perjury, conspiracy to commit perjury, and obstruction of justice. (Def.'s Am. Mot. to Vacate Convictions Per § 2255 ("Am. § 2255 Pet.") at 2:19-14:13 (Docket No. 789).) Petitioner specifically argues that his counsel should have "obtained Mr. Lobo's deposition and related discovery materials from the patent and antitrust cases to demonstrate that the meeting with Mr. Lobo actually occurred and that Quickturn knew of the issuance of Aptix's patent in 1996." (Id. at 12:3-5.)

Many of the documents in the underlying civil suits were filed under a protective order requiring that protected documents be identified as "For Attorneys Eyes Only." Prior to the start of the criminal trial, petitioner's original counsel, John Williams, stated that he had reviewed the files from the civil case and noticed that many of them were sealed. The

3

government did not object at that time to unsealing the documents, but noted that QuickTurn objected to having a competitor review the documents. (Sept. 9, 2003, Tr. at 1-4.) Judge Alsup, who was still presiding over the case at the time, suggested that petitioner's counsel make a motion to unseal the material that appeared to be valuable. (Id.) Petitioner's counsel withdrew prior to filing any such motion and petitioner's subsequent counsel did not move to lift the protective order.

In opposition to the amended § 2255 petition, the government notes in passing that "because Mohsen has not provided the Lobo deposition as an exhibit to this motion, it is pure speculation that the Lobo deposition establishes that the meeting actually occurred." (US's Opp'n to § 2255 Mot. at 52:2-4 (Docket No. 805).) Based on this statement, petitioner argues that whether there was a meeting on August 19, 1996, and when QuickTurn received notice of the patent infringement are issues of factual dispute that cannot be answered without access to the files in the underlying civil cases. (Mot. for Discovery at 2:2-13.)

Petitioner now moves the court to lift the protective order in the underlying civil cases so that petitioner may review all of the documents filed in the patent and antitrust suits that are in the possession of the liquidator of Howrey & Simon, the law firm that represented Aptiz in both civil suits. (Id. at 8:18-9:2.) In the alternative, petitioner suggests that such extensive discovery would not be necessary if QuickTurn (now Cadence Design Systems) will confirm (1) whether a meeting between Mr. Lobo and petitioner took place on or about August 19,

4

1996, and (2) whether QuickTurn received notice of infringement of the '069 patent at that meeting or by any other means at or near that date. (Id. at 9:3-19.)

In addition to the government's opposition to petitioner's motion for discovery, the court has received a statement from Cadence Design Systems ("Cadence") regarding the motion. (Docket No. 820.) Cadence acquired QuickTurn in 1999 and therefore owns all of QuickTurn's proprietary business information pertaining to the antitrust and patent issues. (Statement by Third Party at 2:1-6 (Docket No. 820).) Cadence does not take a position as to whether petitioner's discovery request is legally appropriate, but notes that any such discovery would present a disclosure issue and that Cadence should be able to review any documents that petitioner would like to publically use to determine whether the documents contain information that is still confidential. (Id. at 2:19-3:3.) Cadence does object to petitioner's alternative discovery proposal, which would require interrogatories and requests for admission from Cadence, but further notes that even if such discovery were legally permissible, Cadence does not possess the institutional knowledge to respond to such requests. (Id. at 3:4-12.)

II. Discussion

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904 (1997). Rule 6 of the Rules Governing Section 2255 Proceedings provides for discovery as follows:

(a) Leave of Court Required. A judge may, for good

> cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law. . . .
> (b) Requesting Discovery. A party requesting discovery must provide reasons for the request. The request must also include any proposed interrogatories and requests for admission, and must specify any requested documents.

Section 2255 R. 6. Good cause exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." Bracy, 520 U.S. at 909-10 (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)) (alteration in original). "Denial of an opportunity for discovery is an abuse of discretion when the discovery is necessary to fully develop the facts of a claim." Teague v. Scott, 60 F.3d 1167, 1172 (5th Cir. 1995).

Good cause does not exist, however, where the facts alleged do not demonstrate a basis for relief. See Hubanks v. Frank, 392 F.3d 926, 933 (7th Cir. 2004); United States v. Huner, No. CV 08-2369, 2009 WL 2509184, at *1 (D. Ariz. Aug. 17, 2009) (denying discovery because "[p]etitioner has not alleged facts which, if true, would demonstrate that he is entitled to relief"). The court need not "allow prisoners to use federal discovery for fishing expeditions to investigate mere speculation." Calderon v. U.S. Dist. Ct. N.D. Cal., 98 F.3d 1102, 1106 (9th Cir. 1996).

Petitioner's requested discovery on the Lobo notes is at least one step removed from the primary issue at trial, which was whether the engineering notebooks were fabricated and material to the underlying civil litigation. At trial, the

government presented overwhelming evidence establishing that the notebooks were material to the civil litigation, but suggested during closing arguments that the jury could also find the notebook material because it provided evidence that the Lobo notes, which petitioner used to established treble damages in the patent suit, were fraudulent.[2] (RT 1224-25.) Petitioner does not argue that additional discovery on the facts underlying the Lobo notes will show that they were not forged, but only that they would not have been material in the civil litigation.

As to petitioner's Brady claim, that the government failed to turn over exculpatory evidence regarding the Lobo meeting, petitioner's request for discovery will not establish whether the Lobo deposition was ever in the government's possession. Petitioner's discovery request will only shed light on whether the Lobo meeting took place and if notice of infringement was provided at that time. This evidence will not counter the government's evidence that it was not in possession of the deposition during the pendency of the criminal case. Accordingly, good cause does not exist for discovery on the basis of petitioner's Brady claim.

As to petitioner's claim for ineffective assistance of counsel, assuming the court were to permit petitioner his requested discovery, at most the discovery granted might prove that the Lobo meeting did take place and that QuickTurn did

---

[2] The Ninth Circuit Court of Appeals has already held that the government's reliance on the Lobo notes during closing arguments was proper and did not constitute constructive amendment of the indictment. United States v. Mohsen, 587 F.3d 1028, 1031 (9th Cir. 2009).

7

receive notice of infringement either at or before the meeting with petitioner. Petitioner's motion assumes that if there was independent evidence supporting the facts alleged in the falsified Lobo notes, the fabricated notes and his misrepresentations regarding the notes would no longer have been considered "material" in the civil case and therefore he might have been acquitted. As this court noted during sentencing, however, the falsification of the Lobo notes had independent probative value, regardless of whether the meeting actually took place, because they indicate that petitioner "felt that it was necessary to fabricate the evidence in order to persuade the trier of fact that the meeting did occur." (Jan. 5, 2007 Tr. at 84.)

For petitioner's perjury conviction, the jury did not need to find that the falsified Lobo notes were actually relied upon in the civil trial, only that the misrepresentation had a natural tendency to influence the fact-finder's decision on an issue which was relevant to the matters to be determined by the fact-finder. See United States v. McKenna, 327 F.3d 830, 839 (9th Cir. 2003). Whether the Lobo notes were material was based on their materiality when petitioner produced the notes and not based on whether the notes actually influenced the civil litigation. See id. Discovery showing that the Lobo notes would not have been relevant during trial in the patent suit would therefore be insufficient to show that the notes did not have a natural tendency to influence the fact-finder's decision when they were produced by petitioner at his deposition to support his claim for treble damages.

Similarly, for petitioner's obstruction of justice conviction the jury did not need to find that petitioner's falsification of the Lobo notes actually served to obstruct justice, only that petitioner acted with the intent to obstruct justice. See United States v. Rasheed, 663 F.2d 843, 853 (9th Cir. 1981) (noting that "actual obstruction is not an element of proof"); cf. Osborn v. United States, 385 U.S. 323, 333 (1966). The proposed discovery will not provide any additional information as to petitioner's intent to obstruct justice when he created the falsified Lobo notes. The possibility that evidence regarding when QuickTurn received notice of infringement would have rendered the Lobo notes unnecessary was therefore not relevant to whether petitioner intended to influence the outcome of the civil patent suit.

Finally, petitioner challenges the standing of the government to oppose his motion for discovery. (Reply to Opp'n to Mot. for Discovery at 3:24-5:18 (Docket No. 816).) Because discovery is not automatic in § 2255 cases, petitioner would not have been entitled to discovery simply because the government did not opposed his motion. Regardless of whether the government had standing to oppose the motion, petitioner bears the burden of demonstrating good cause. See Stanford v. Parker, 255 F.3d 442, 460 (6th Cir. 2001). Petitioner has not met this burden, therefore the question of whether the government had standing to oppose the motion is irrelevant.

Because petitioner's requested discovery would not provide evidence demonstrating that he is entitled to relief, petitioner has failed to show good cause for the requested

discovery.

IT IS THEREFORE ORDERED that petitioner's motion for discovery be, and the same hereby is, DENIED.

DATED: May 29, 2012

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE